IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

| | |
|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) Case No.: 8:17-cv-00977-MSS-TBM ) |
| STME, LLC d/b/a MASSAGE ENVY-SOUTH TAMPA, | ) ) ) |
| Defendant. | ) ) ) |

**DEFENDANT STME, LLC's d/b/a MASSAGE ENVY – SOUTH TAMPA RESPONSE IN OPPOSITION TO PLAINTIFF EQUAL EMPLOYMENT OPPORTUNITY COMMISSION'S MOTION FOR LEAVE TO FILE A SECOND AMENDED COMPLAINT AND MEMORANDUM IN SUPPORT**

Defendant, STME, LLC d/b/a MASSAGE ENVY – SOUTH TAMPA ("Defendant"), by and through its undersigned counsel, pursuant to Federal Rule of Civil Procedure 15 and Local Rule 3.01(b) of the Middle District of Florida, hereby files this its Response in Opposition to Plaintiff Equal Employment Opportunity Commission's ("Plaintiff" or "EEOC") Motion for Leave to File a Second Amended Complaint (Doc. 34) ("Motion to Amend"), and states as follows:

**INTRODUCTION**

It has been over three years since Kimberly Lowe filed her Charge of Discrimination on December 2, 2014 and Plaintiff is still trying to figure out how to frame its disagreement with Defendant's legitimate business decision to terminate Lowe's employment as a violation of the Americans With Disabilities Act ("ADA"). Blinded by its own agenda to unreasonably expand

the scope of the ADA's coverage to potential – not actual – discrimination claims, Plaintiff recklessly wields the mighty power of the Federal Government and arrogantly squanders hard-earned taxpayer dollars to contrive novel causes of action against a small franchisee in the hope that sooner or later it might create enough factual confusion to state a claim that survives dismissal. Now Plaintiff seeks leave to file yet another amended pleading, this time adding a hypothetical ADA interference claim, which was never raised during the administrative proceedings, which Plaintiff lacks Article III standing to bring, and which fails to state a claim upon which relief may be granted.

The ADA was intended to protect real – not hypothetical – victims of discrimination. Plaintiff's hypothetical ADA interference claim is another attempt by Plaintiff to unreasonably expand the scope of the ADA to cover possible discriminatory conduct against healthy individuals in the future, even where (as in this case), no violation of law ever occurred.[1] Plaintiff's misuse of power and resources in pursuit of a hypothetical ADA interference claim, and Plaintiff's blatant exploitation of the facts surrounding Lowe's discharge to pursue an unreasonably expansive application of the ADA, does a disservice to the real victims of discrimination who the ADA was designed protect.

Anticipating that the court will dismiss its previously asserted "regarded as" and associational discrimination claims because it is clear that Lowe was never disabled, never "regarded as" disabled, and never known to have associated with a disabled person, Plaintiff now seeks to ambush Defendant with an obscure ADA interference claim in a desperate attempt to proceed with this litigation in the event the Court disposes of its previously asserted claims. The fact that Plaintiff does not even allege an existing right that Lowe exercised or enjoyed under the

---

[1] Plaintiff is also attempting to enforce potential "regarded as" and associational discrimination claims, which are the subject matter of Defendant's pending Motion to Dismiss (Doc. 16).

ADA with which Defendant allegedly interfered is clear evidence of Plaintiff's pursuit of a hypothetical claim, which is doomed to fail.

For the reasons set forth herein, Plaintiff's Motion to Amend should be dismissed.

## MEMORANDUM

Pursuant to Federal Rule of Civil Procedure 15(a)(2), leave to amend should be freely given when justice so requires. However, the Court may deny leave to amend based on factors, such as, "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of amendment." Equity Lifestyle Props., Inc. v. Fla. Mowing & Landscape Serv., Inc., 556 F.3d 1232, 1241 (11th Cir. 2009) (quoting Foman v. Davis, 371 U.S. 178, 182 (1962). Because most of these factors are present here, Plaintiff's Motion to Amend should be denied.

**1.     Plaintiff's proposed Second Amended Complaint is clearly futile.**

**A.     Plaintiff failed to exhaust administrative remedies as to its proposed ADA interference claim.**

Before filing suit under Title I of the ADA (covering disability based employment discrimination claims), a plaintiff must first file a charge of discrimination with the EEOC. 42 U.S.C. §12117(a) (applying the procedures of 42 U.S.C. §2000e-5 (Title VII) to the ADA); and Wilkerson v. Grinnell Corp., 270 F.3d 1314, 1317 (11th Cir. 2001).  This includes "the EEOC itself." EEOC v. Joe's Stone Crabs, Inc., 296 F.3d 1265, 1271 (11th Cir. 2002). Filing an EEOC charge serves an important purpose by triggering the EEOC's investigatory and conciliatory procedures. Houston v. Army Fleet Services, LLC, 509 F.Supp.2d 1033, 1040 (M.D.Ala.2007). "[T]he charge must enable the EEOC to serve its administrative enforcement role by conducting

a full investigation while also providing the employer with advance notice of the claim and an opportunity to resolve the dispute." Id.

The EEOC charge and investigation are "[t]he starting point of ascertaining the permissible scope of a [subsequent] judicial complaint..." Alexander v. Fulton County, Ga., 207 F.3d 1303, 1332 (11th Cir. 2000), overruled on other grounds by Manders v. Lee, 338 F.3d 1304 (11th Cir. 2003). "**A plaintiff's judicial complaint is limited by the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination** [emphasis added]." Id. While judicial claims that amplify, clarify, or more clearly focus the allegations in an EEOC charge are permissible, the Eleventh Circuit has "cautioned 'that **allegations of new acts of discrimination are inappropriate for a post-charge judicial complaint** [emphasis added].'" Duble v. FedEx Ground Package System, Inc., 572 Fed.Appx. 889, 892 (11th Cir. 2004), *cert denied*, --- U.S. ---, 135 S.Ct. 2379, 192 L.Ed.2d 165 (2015) citing Gregory v. Georgia Dept. of Human Resources, 355 F.3d 1277, 1279-80 (11th Cir. 2004).

No ADA interference claim was ever raised by Lowe during the administrative proceedings even by the most tortured reading of Lowe's Charge and/or the EEOC's investigative findings as summarized in its September 6, 2016 Letter of Determination ("LOD") (Doc. 16-2). Nor does Lowe allege any facts in her Charge from which the EEOC could reasonably infer that Defendant interfered with her exercise and enjoyment of rights under the ADA including, but not limited to, any purported "right" to a reasonable accommodation or to associate with a person with a known disability. See Lowe's EEOC Charge (Doc. 16-1). In fact, as Lowe made clear in her Charge, "**Ghana has never had Ebola; thus, there was no risk to my health or the health of those around me** [emphasis added]." (Doc. 16-1). Lowe specifically denied the existence of any actual (or potential) right to a reasonable accommodation or to

associate with persons disabled by Ebola as result of her travel to Ghana. Clearly, Plaintiff's proposed ADA interference claim is not reasonably related to Lowe's allegations in her Charge, which is why no such claim was ever investigated by the EEOC during its twenty-one month investigation of the Charge.[2] Plaintiff also admits that its proposed ADA interference claim "**is independent from**, and thus has no bearing on, the viability of EEOC's regarded as disabled and/or disability by association claims in its operative Amended Complaint [emphasis added]."[3] (Doc. 34, pg. 4).

Courts have routinely dismissed claims for failure to exhaust administrative remedies where (as in this case) the charge fails to set forth a factual basis for the claim. Houston, 509 F.Supp.2d at 1043-44 ("a plaintiff must exhaust [her] … administrative remedies as to that claim by including factual information in the charge that discloses the factual basis for the … claim"); see also, Edmonds v. Southwire Co., 58 F.Supp.3d 1347, 1354-55 (N.D.Ga.2014) (plaintiff failed to exhaust administrative remedies as to her ADA hostile work environment claim where plaintiff failed to report any harassment or evidence of a hostile work environment in her EEOC charge); Ramon v. AT & T Broadband, 195 Fed.Appx. 860, 866 (11th Cir. 2006) (plaintiff failed to exhaust administrative remedies where plaintiff's retaliation and hostile work environment claims could not have reasonably been expected to grow from the allegations in the charge); and Gomez v. New York City Police Dept., 191 F.Supp.3d 293, 300 (S.D.N.Y. 2016) (dismissing plaintiff's ADA retaliation claim for failure to exhaust administrative remedies where plaintiff's EEOC complaint failed to allege any protected activity for which retaliation would be prohibited).

---

[2] Lowe filed her Charge (Doc. 16-1) on December 2, 2014, and the EEOC issued its determination (Doc. 16-2) on September 6, 2016.

[3] As discussed in Defendant's pending Motion to Dismiss (Doc. 16), among other things, Plaintiff failed to exhaust administrative remedies as to its associational discrimination claim.

Plaintiff's proposed ADA interference claim was never raised, inferred or investigated during the administrative proceedings, and Defendant was not afforded notice of any such claim or an opportunity to conciliate any such claim prior to the instant litigation. Because Plaintiff blatantly failed to exhaust administrative remedies as to its proposed ADA interference claim, Plaintiff's proposed Second Amended Complaint to add this claim is futile. See, e.g., Norris v. Salazar, 885 F.Sup.2d 401, 415 (D.D.C.2012) (leave to amend would be futile where plaintiff failed to exhaust administrative remedies); and Cusack v. Delphi Corp., 686 F.Supp.2d 254, 259 (W.D.N.Y.2010) (denying motion to amend where plaintiff failed to timely file an administrative charge relating to his proposed new claim).

### B. Plaintiff lacks standing to invoke the Court's federal jurisdiction as to its proposed ADA interference claim.

Plaintiff bears the burden of establishing constitutional Article III standing to invoke this Court's federal jurisdiction. As the U.S. Supreme Court made clear in Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-561 (1992) (internal quotations and citations omitted),

> …the irreducible constitutional minimum of standing contains three elements. First the plaintiff must have suffered an "injury in fact" – an invasion of a legally protected interest which is (a) concrete and particularized; and (b) "actual or imminent, not "conjectural" or "hypothetical." Second, there must be a causal connection between the injury and the conduct complained of – the injury has to be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court. Third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

The mere speculative threat of injury is not sufficient to confer Article III standing. Barley v. Riley, 2:10-cv-798- WC [WO], 2013 WL 4851594,*9 (M.D.Ala. Sept. 11, 2013) citing Hill v. McDonough, 547 U.S. 573, 585 (2006). Yet that is precisely the case here. In support of its Motion to Amend, Plaintiff offers portions of Owner Ron Wuchko's deposition testimony in response to a series of hypothetical questions regarding what rights Lowe might have had *if* she

had not been discharged on October 22, 2014, *if* she had contracted Ebola during her trip to Ghana, and *if* she had sought to return to work thereafter. See, Doc. 34-2: pgs. 113-116. By any reading of Wuchko's deposition transcript, and as evidenced by the following excerpt (Doc. 34-2: pgs. 115:11-116:7), it is very clear that Plaintiff's attempt to add an interference claim is based solely on speculation and conjecture.

> By Ms. Banks:
>
> Q. Okay. Now I'm going to ask you another question. Your understanding regarding a company being required to engage in this Interactive Process, to come up with reasonable accommodations, do you understand time-off for leave is potentially a reasonable accommodation under certain circumstances?
>
> A. Yes.
>
> Q. Okay. So leave could have been something that could be provided to Kimberly Lowe if you wanted to accommodate her disability?
>
> A. She's not disabled. She wasn't disabled when I dismissed her.
>
> Q. I understand that. So the **hypothetical** that we're talking about now is, had she traveled – wait – had you not terminated her employment, had she traveled to West Africa and returned to the United States with Ebola, you understand that giving her time off would have been potentially an option to consider during the Interactive Process [emphasis added]?
>
> Mr. Joshi:  Object to form.
>
> The Witness: Time off? She probably would be dying. But yes, I understand the process.

Plaintiff's take away from Wuchko's responses to this line of hypothetical questions is that Defendant interfered with rights that could possibly be implicated *if* Lowe had not been discharged on October 22, 2014, *if* Lowe had contracted Ebola during her trip to Ghana, and *if* Lowe had sought to return to work following her trip. But any alleged harm that Lowe might have suffered under this hypothetical scenario is purely conjectural and hypothetical in nature – and never occurred. In fact, just as Lowe made clear in her Charge, "**Ghana has never had**

**Ebola; thus, there was no risk to my health or the health of those around me** [emphasis added]."[4]

Plaintiff makes no claim that Lowe was actually ever entitled to a reasonable accommodation at any time; that Lowe actually ever requested a reasonable accommodation at any time; or that Lowe's need for an accommodation was imminent at any time. Likewise, Plaintiff makes no claim that Lowe actually had a known association with a person with Ebola at any time or that Lowe's association with a person with Ebola was imminent at any time. Put simply, Plaintiff does not allege any existing right that Lowe exercised or enjoyed that Defendant interfered with much less any injury in fact as result of Defendant's alleged interference.

Additionally, Plaintiff's hypothetical ADA interference claim implicates hypothetical defenses including, e.g., a direct threat defense, which would certainly be a viable defense *if* Lowe's employment had not been terminated, *if* Lowe had contracted Ebola during her trip to Ghana, and *if* Lowe sought to return to work. Presumably, since Ebola is a contagious and deadly disease, even Plaintiff would agree that it poses a direct threat to the health of others and certainly would have posed a direct threat to Defendant's clients and employees *if* Lowe had sought to return to work infected with the Ebola virus. Entertaining such potential defenses at this juncture would be no more absurd than litigating a hypothetical ADA interference claim based on Wuchko's responses to a "what if" line of questioning by Plaintiff's counsel.

Here Plaintiff fails to allege an injury in fact and lacks Article III standing to pursue an ADA interference claim. Accordingly, Plaintiff's proposed amendment is futile. See, e.g.,

---

[4] In its initial Complaint, Plaintiff had also admitted that there was no Ebola outbreak in Ghana in 2014. (Doc. 1, ¶22). Plaintiff removed this allegation when it raised a surprise associational discrimination claim in its Amended Complaint) (even though Lowe was never known to have associated with anyone with Ebola).

Weinstein v. U.S. Air Force, 468 F.Supp.2d 1366, 1375 (D.N.M.2006) ("[w]ithout Article III standing, it would be futile … to bring … claims in the proposed Second Amended Complaint").

### C. Plaintiff proposed Second Amended Complaint fails to state a cause of action upon which relief may be granted.

There is a dearth of case law dealing with ADA interference claims pursuant to 42 U.S.C. §12203(b),[5] which states:

> It shall be unlawful to coerce, intimidate, threaten, or interfere with any individual in the exercise or enjoyment of, or on account of his or her having exercised or enjoyed, or on account of his or her having aided or encouraged any other individual in the exercise or enjoyment of, any right granted or protected by this chapter.

However, recently, in Frakes v. Peoria School District, 872d F.3d 545 (7th Cir. 2017), the Seventh Circuit relied on identical language found in the anti-interference provision of the Fair Housing Act ("FHA")[6] to establish the legal standard for an anti-interference claim under the ADA.

In Frakes, the plaintiff, a special education teacher, was dismissed pursuant to a voluntary reduction in force after receiving an unsatisfactory performance evaluation for which she was placed on a list of teachers subject to dismissal. Id. at 548. The plaintiff subsequently filed suit against the school district alleging that it violated Section 504 of the Rehabilitation Act, 29 U.S.C. §794, by unlawfully interfering with her ability to assist her disabled students in exercising their rights. Id. The district court granted summary judgment in favor of the school district because the plaintiff failed to engage in protected activity, and the plaintiff appealed. Id.

---

[5] Counsel for Defendant has not yet been able to locate a case in the Eleventh Circuit that is instructive regarding the anti-interference provision of the ADA.
[6] The FHA was enacted as Title VIII of the Civil Rights Act of 1968, and amended in 1988 to prohibit discrimination based on handicap. See, FHA Amendments Act of 1988 ("FHAA"), Pub. L. No. 100-430, 102 Stat. 1619 (1988) (codified at 42 U.S.C. §3604(f)(3)(B)).

In analyzing the plaintiff's interference claim, the Seventh Circuit explained that Section 504 of the Rehabilitation Act is a sister statute to the ADA and "mirrors the standards applied under Title I of the ADA … as they relate to employment." Id. at 550. Because the Seventh Circuit had not previously addressed an ADA interference claim, it looked to its application of an identical provision in the FHA for guidance. See also, Brown v. City of Tucson, 336 F.3d 1181, 1191 (9th Cir. 2003) (applying the FHA's anti-interference standard to an interference claim under the ADA). According to the Seventh Circuit,

> [a] plaintiff alleging an ADA interference claim must demonstrate that: (1) she engaged in activity statutorily protected by the ADA; (2) she was engaged in, or aided or encouraged others in, the exercise or enjoyment of ADA protected rights; (3) the defendants coerced, threatened, intimidated, or interfered on account of her protected activity; and (4) the defendants were motivate by an intent to discriminate.[7]

Reasoning that "[p]rotected activities are those statutorily protected under the ADA, including opposing or complaining about discrimination based on disability," the Seventh Circuit was not persuaded by the plaintiff's claim that she had engaged in protected activity by refusing to change her teaching methods for disabled students following her unsatisfactory performance evaluation. Id. at 551. "The fact that … [the plaintiff] taught students who are protected by the ADA does not alone render the teaching 'protected activity.'" Id. Because the plaintiff failed to show that her opposition to her unsatisfactory performance evaluation was an assertion of rights on behalf of her disabled students, the Seventh Circuit agreed with the district court that the Plaintiff could not establish an ADA interference claim.

---

[7] The FHA's anti-interference provision states: "It shall be unlawful to coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of, or on account of his having exercised or enjoyed, or on account of his having aided or encouraged any other person in the exercise or enjoyment of, any right granted or protected by … this title." 42 U.S.C. §3617.

It makes sense to look to the application of the "identical" language in the anti-interference provision of the FHA for guidance in interpreting the anti-interference provision of the ADA. In fact, the FHA's anti-interference provision was specifically referenced in a May 15, 1990 Committee Report preceding the passage of the ADA, which states:

> Section 502(b) of the legislation [ADA] specifies that it shall be unlawful to coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of, or on account of his or her having exercised or enjoyed, or on account of his or her having aided or encouraged any person in the exercise or enjoyment of, any right granted or protected by this legislation. **The Committee intends that the interpretation given by the Department of Housing and Urban Development to a similar provision in the Fair Housing Act ... be used as a basis for regulations for this section** [emphasis added]."

H.R.Rep. No. 485(II), 101st Cong., 2d Sess. 138 (1990) *reprinted in* 1990 U.S.C.C.A.N. 303, 421. The ADA adopted the identical language of the FHA's anti-interference provision.

The association between the FHA and ADA has also been recognized in the Eleventh Circuit, which has looked to the ADA and the Rehabilitation Act ("RA") for guidance on what is a reasonable accommodation under the FHA. See, e.g., Schwarz v. City of Treasure Island, 544 F.3d 1201, 1220 (11th Cir. 2008) (analyzing claims under the FHA framework where plaintiffs raised no distinct arguments as to their ADA, RA and equal protection claims); see also, Fisher v. SP One, Ltd., 559 Fed.Appx. 873, n1 (11th Cir. 2014) (analyzing plaintiff's RA and Florida FHA claims under the FHA framework). In the Eleventh Circuit, the plain language of the FHA's anti-interference provision "only creates a cause of action for persons who are themselves exercising a right under the Act or somehow aiding another in exercising their rights under the FHA." Telesca v. Village of Kings Creek Condominium Ass'n, Inc., 390 Fed.Appx. 877, *4 (11th Cir. 2010); see also West v. DJ Mortgage, LLC, 164 F.Supp.3d 1393, 1400 (N.D.Ga.2016) (stating the elements of an interference claim under the FHA including, but not limited to, the

requirement that a plaintiff allege that she "was engaged in the exercise or enjoyment of a right protected by the FHA").

Just before the Seventh Circuit's decision in Frakes, a district court in Connecticut decided an ADA interference claim involving a letter sent to employees by defendant's labor counsel during the course of an EEOC investigation. EEOC v. Day & Zimmerman NPS, Inc., No. 15-cv-1416 (VAB), 2017 WL 3613022 (D.Conn. Aug. 22, 2017). Among other things, the letter identified the charging party by name, detailed the sensitive allegations of his charge and advised the employees that they may be contacted by an EEOC investigator. Id. at *4. According to the plaintiff (the EEOC), the letter interfered with the charging party's rights under the ADA and had a tendency to chill those who received the letter in exercising their rights under the ADA.[8] Id. at 17. Acknowledging that neither the Supreme Court nor the Second Circuit has yet outlined a legal test for an ADA interference claim, the district court relied on general interpretations of a "similar" provision in the NLRA, 29 U.S.C. §158, in finding that a reasonable jury could conclude that the letter could interfere with or intimidate the letter's recipients with respect to communicating with the EEOC about possible disability discrimination. Id. at *19. The district court never considered the FHA in its analysis.[9]

Unlike the instant case, the alleged interference at issue in Day & Zimmerman occurred in connection with the former employee's actual (not hypothetical) protected activity, i.e., the EEOC's investigation of his charge, and was directly related to the EEOC's investigation. Because there is no underlying protected activity implicated in the instant case (as discussed,

---

[8] Plaintiff makes no claim in this case that Defendant interfered with the ADA protected rights of any person other than Lowe.

[9] In Day & Zimmerman, the district court also addressed whether the EEOC had Article III standing to bring its case in the absence of potential monetary relief. Concluding that the EEOC had Article III standing to do so, the district court recognized that where Congress enacts a statue that defines an "injury in fact," then a violation of such law constitutes an injury to United States. Id. at *8.  In the instant case, unlike in Day & Zimmerman, Defendant challenges Plaintiff's Article III standing to pursue a hypothetical speculative injury that is not defined by statute.

below) and Lowe had no existent ADA protected right with which Defendant interfered, Plaintiff's ADA interference claim is easily distinguishable from the claim in Day & Zimmerman.

In this case, Plaintiff contends that Defendant violated the ADA's anti-interference provision in three ways: (1) by foreclosing Lowe's "future exercise" of the right to a reasonable accommodation (Doc. 34-1, ¶28); by interfering with Lowe's exercise and enjoyment of the right to associate with disabled persons (Doc. 34-1, ¶30); and (3) by interfering with Lowe's **unidentified** "rights" by informing potential employers that Lowe is not eligible for rehire (Doc. 34-1, ¶39). However, beyond Plaintiff's conclusory self-serving claims of unlawful interference, **Plaintiff makes no allegation that Lowe engaged in any protected activity at any time during her employment and provides no factual basis in support of its claims**. Lowe was not disabled and had not requested a reasonable accommodation at the time of her discharge, and she had no known association with a disabled person at the time of her discharge. Thus, Plaintiff's Second Amended Complaint fails to establish any existent right to a reasonable accommodation or to associate with a known disabled person with which Defendant allegedly interfered. Certainly, Plaintiff does not and cannot reasonably contend that Lowe's impending travel plans to Ghana amounted to statutorily protected activity under the ADA. Because Plaintiff's proposed ADA interference claim is based entirely on a hypothetical scenario, Plaintiff is not able to cure this defect by any further amendment.

Turning next to Plaintiff's claim that Defendant continues to interfere with Lowe's "rights" (without identifying these "rights") by informing potential employers that she is not eligible for rehire, Plaintiff fails to state any ADA protected right that is implicated by Lowe's ineligibility for rehire. Put simply, Lowe has no ADA protected right to rehire. Wuchko testified

that he does not rehire employees who he has fired. See, e.g., Doc. 34-2, pgs. 73:23-74:2. Wuchko never testified that he informed a single prospective employer that Lowe was not eligible for rehire. Additionally, beyond its bare conclusory assertion, Plaintiff has not alleged a single fact establishing that Wuchko (or any other official) ever communicated to any prospective employer that Lowe was not eligible for rehire. See, e.g., Williams v. Savage, 569 F.Spp.2d 99 (D.C.C.2008) (denying plaintiff's motion to amend where plaintiff's allegation of a record of impairment was "unsupported by facts and merely a legal conclusion masquerading as a factual allegation"). As in Williams, Plaintiff's purported interference claim relating to Lowe's ineligibility for rehire is nothing more than an unwarranted legal conclusion masquerading as a factual allegation, which is likely offered solely for any potential inflammatory value, and the Court need not accept it as true. See, e.g., Campos v. I.N.S., 32 F.Supp.2d 1337, 1343 (S.D.Fla.1998) (courts "… need not accept factual claims that are internally inconsistent, facts which run counter to facts of which the court can take judicial notice, conclusory allegations, unwarranted deductions, or mere legal conclusions asserted by a party"); Bell Atl. Corp v. Twombly, 550 U.S. 544, 555 (2007) (internal quotation omitted) (alteration omitted) ("a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions); and Telesca, 390 Fed.Appx. at 883 (same).

Plaintiff's failure to allege that Lowe engaged in any statutorily protected activity or otherwise exercised or enjoyed an actual ADA protected right with which Defendant interfered, is fatal to its ADA interference claim. Because Plaintiff's proposed Second Amended Complaint fails to state a claim upon which relief may be granted, it is futile. Hall v. United Ins. Co. of America, 367 F.3d 1255, 1262 (11th Cir. 2004) (affirming district court's denial of plaintiff's

motion to file a second amended compliant because "no potentially meritorious claims" were presented and amendment would be futile).

### 2. **Plaintiff has unduly delayed in seeking to amend its pleading.**

Within days of her discharge and prior to her trip to Ghana, Lowe was interviewed by Channel 10 News. See WTSP article published on October 24, 2014, Andre Senior, "Masseuse claims firing over Ebola threat" (Ex. 1). According to Lowe, she was fired from her job with Defendant because of her planned vacation to Ghana during the Ebola outbreak. Thereafter, on or about December 2, 2014, Lowe filed her Charge (Doc. 16-1) alleging that she was discriminated by Defendant in that she was perceived as disabled or having the potential to become disabled in violation of the ADA.

The EEOC's investigation of Lowe's Charge spanned a period of approximately twenty-one months before the EEOC issued its September 6, 2016 LOD (Doc. 16-2) finding that Lowe's allegations that "[Defendant] …regarded her as disabled and terminated her 3 days prior to a planned trip to Ghana because the [Defendant] .. believed she could contract Ebola" had merit. (Doc. 16-2, pg. 1).

During the course of Plaintiff's investigation, in addition to multiple requests for supplemental information, Plaintiff interviewed Wuchko and Business Manager, Roxana Iorio, at its offices in Tampa, Florida on August 18, 2016. Following his interview, Wuchko provided an Affidavit to Plaintiff, in which, among other things, Wuchko reiterated that he met with Lowe "to attempt to convince her to cancel or reschedule her trip at least until the threat of Ebola had dissipated." (Ex. 2, ¶8). According to Wuchko,

> …Ms. Lowe was not cooperative and flatly refused to consider canceling or delaying her trip to West Africa. Her tone was defiant and insubordinate. As the result of her insubordinate refusal to cancel or delay her travel plans, I made the

> decision to discharge Ms. Lowe particularly given the potentially catastrophic consequences that an outbreak of Ebola could pose to America.[10]

Id. This is the same meeting that Plaintiff now characterizes as coercive, intimidating and threatening in nature. Wuchko was very clear that he held no belief that Lowe had Ebola or had been exposed to Ebola when he discharged her. (Ex. 2, ¶9).

From the time that Lowe first communicated with the media and throughout the administrative process, Lowe and Plaintiff were well aware of Wuchko's October 22, 2014 meeting with Lowe to convince her to cancel or delay her impending travel plans to Ghana because of Wuchko's concern about the outbreak of Ebola in West Africa. These facts were fully developed during the administrative proceedings. Now, purportedly based on Wuchko's hypothetical answers to a "what if" line of questioning by Plaintiff's counsel, Plaintiff seeks to amend its pleading once again to add an ADA interference claim – when the same hypothetical questions could have been posed to Wuchko during the administrative proceedings over 3 years ago. "Where the party seeking amendment knows or should have known of the facts upon which the proposed amendment is based but fails to include them in the original complaint, the motion to amend is subject to denial." Las Vegas Ice and Cold Storage Co. v. Far West Bank, 893 F.2d 1182, 1185 (10th Cir. 1990) (internal quotation omitted).  Contrary to Plaintiff's claim, Wuchko's deposition testimony is not new evidence of discrimination revealed in discovery but rather, contrived evidence based on speculation and conjecture as to ADA rights that Defendant could have possibility violated *if* Lowe's employment had not been terminated, and *if* Lowe contracted Ebola during her trip to Ghana, and *if* Lowe sought to return to work infected with the Ebola virus.  Plaintiff unreasonably delayed (almost three years after Lowe filed her Charge) in

---

[10] Plaintiff has repeatedly cited Wuchko's reference to the "potentially catastrophic consequences that an outbreak of Ebola could pose to America" in its pleadings. See, Doc. 1, ¶19; Doc. 14, ¶21; and Doc. 34-1, ¶21.

alleging its hypothetical ADA interference claim, which could have been raised during the administrative proceedings or in Plaintiff's original Complaint.

### 3. **Plaintiff's Motion to Amend is brought in bad faith and unduly burdensome.**

It is improper for Plaintiff to use this litigation as a forum to continue its investigation of Lowe's Charge more than three years after it was filed for the purpose of contriving novel causes of action against Defendant, which were never raised during the administrative proceedings. Now, in the face of a decision by the Court that could end this litigation, Plaintiff has contrived yet another novel (and hypothetical) claim to advance its agenda of extending the ADA's coverage to possible disability discrimination claims in the future that might or might not ever arise. As evidenced by the following excerpt from Wuchko's deposition testimony (Doc. 34-2; pgs. 117:14 -118:7), Plaintiff's counsel engaged in a "what if" line of questioning with Wuchko intended to contrive and create an ADA interference claim:

> Q. Had you not had this Ebola meeting and Kimberly Lowe traveled to West Africa, contracted Ebola and came back to the United States, you would have had to engage in that Interactive Process with her; you understand that?
>
> A. Yes.
>
> Mr. Joshi: Objection to form.
>
> The Witness: Yes.
>
> Mr. Joshi: It calls for a legal conclusion. Let me finish my objection.
>
> The Witness: Oh, I'm sorry.
>
> By Ms. Banks:
>
> **Q. So do you see how terminating her or having this meeting prior to the trip, and prior to her contracting any disease, interfered with those rights under the ADA** [emphasis added]? [11]

---

[11] Wuchko's deposition took place on September 27, 2017 about a month after the court's decision in Day & Zimmerman, which as discussed, above, is a case that was brought by Plaintiff and likely motivated this hypothetical line of questioning.

>Mr. Joshi: Objection.
>
>The Witness: Absolutely not. She wasn't disabled and she's not disabled and I never thought of her as being disabled, no.

No matter how many ways Plaintiff tries to manufacture an ADA claim in this case by distorting and contorting the facts associated with Lowe's discharge, Plaintiff's fundamental problem is and has always been the same – Plaintiff does not seek to enforce an actual violation of the ADA. Plaintiff's attempt to enforce an ADA interference claim based on speculative rights that could possibly arise in the future (or not) would have far reaching consequences rendering the ADA a catchall cause of action for every employee who suffers an adverse employment action.

Plaintiff's proposed Second Amended Complaint is the third in a series of pleadings revealing Plaintiff's ongoing struggle to contrive an ADA claim against Defendant based on an alleged violation of speculative rights in the future. In the event that Plaintiff's prior attempts to do so are dismissed, Plaintiff's proposed Second Amended Complaint is its end run game to proceed with its objective to unreasonably expand the application of the ADA to potential – not actual – violations of the law. Plaintiff's proposed ADA interference claim is an egregious surprise attack by Plaintiff with blatant disregard for the scope of the administrative pleadings, the actual facts associated with Lowe's discharge, and existing law. As a result, Defendant has been unduly prejudiced by Plaintiff's strategy of litigating this case by ambush and its ongoing assertion of novel – and imaginary – legal claims, which were never noticed or conciliated during the administrative proceedings and which fail to state a claim upon which relief may be granted under existing law. Defendant has incurred a substantial expenditure of time and resources in responding to Plaintiff's surprise attacks and has been forced to defend against multiple claims, which are not even recognizable in the record of the administrative proceedings.

Respectfully, Defendant requests that the Court put an end to Plaintiff's abuse of power and egregious litigation tactics.

## CONCLUSION

**WHEREFORE**, based on the foregoing, Defendant respectfully requests that the Court deny Plaintiff's Motion to Amend, and grant Defendant all further relief that the Court deems proper including, but not limited to, costs and attorney fees under the standard set forth in Christianburg Garment Co. v. EEOC, 434 U.S. 412, 421, 98 S.Ct. 694, 54 L.Ed.2d 648 (1978) (a prevailing defendant's attorney fees are recoverable "upon a finding that the plaintiff's action was frivolous, unreasonable, *or* [emphasis added] without foundation …)."

Dated this 13th day of December 2017

        Respectfully submitted,

        s/ *Sharon A. Wey*
        SHARON A. WEY, Esq.
        Florida Bar No.: 0048010
        NIKHIL JOSHI, Esq.
        Florida Bar No.: 0123803
        Miller Tack & Madson
        ATTORNEYS FOR DEFENDANT
        3550 Buschwood Park Drive
        Suite 135
        Tampa, Florida 33618
        Telephone: (813) 963-7736
        Facsimile: (813) 969-3639
        Email: sharon@peolawyers.net
                nik@peolawyers.net

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on December 13th, 2017, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system, which will send an electronic notification to all counsel of record including Oshia Gainer Banks, oshia.banks@eeoc.gov, Counsel for Plaintiff,  EEOC Miami District Office, Miami Tower, 100 SE 2nd Street, Miami, Florida 33131; and Michele Leach-Pachinger, mlp@lplaw-mediations.com, Counsel for Kimberly Lowe, 4112 53rd Avenue East, #20802, Bradenton, Florida 34202.

s/ *Sharon A. Wey*
Attorney for Defendant
