### UNITED STATES DISTRICT COURT
### MIDDLE DISTRICT OF FLORIDA
### TAMPA DIVISION

**EQUAL EMPLOYMENT OPPORTUNITY
COMMISSION,**

      **Plaintiff,**

**v.**                                    **Case No: 8:17-cv-977-MSS-CPT**

**STME, LLC d/b/a
MASSAGE ENVY—SOUTH TAMPA**

      **Defendant.**

_____

### <u>ORDER</u>

**THIS CAUSE** comes before the Court for consideration of Defendant's Motion to Dismiss Plaintiff Equal Employment Opportunity Commission's Amended Complaint Pursuant to Federal Rule 12(b)(6) ("Motion to Dismiss") (Dkt. 16); Plaintiff's Response in Opposition thereto (Dkt. 20); Defendant's Reply (Dkt. 26); Plaintiff's Motion for Leave to File a Second Amended Complaint ("Motion for Leave") (Dkt. 34); and Defendant's Response in Opposition thereto.   (Dkt. 37)   Upon consideration of all relevant filings, case law, and being otherwise fully advised, the Court **GRANTS** Defendant's Motion to Dismiss (Dkt. 16) and **DENIES** Plaintiff's Motion for Leave.   (Dkt. 34)

### I.   BACKGROUND

#### A.  Procedural History

Plaintiff, the United States Equal Employment Opportunity Commission ("the EEOC"), sued Defendant, STME, LLC d/b/a Massage Envy – South Tampa ("Massage Envy") for violating the Americans With Disabilities Act ("ADA") under 42 U.S.C. §

12112(a) and (b)(4).   (Dkt. 14)   Massage Envy now moves to dismiss the Amended Complaint for failure to exhaust administrative remedies and failure to state a claim upon which relief may be granted.   (Dkt. 16)   The EEOC opposes the relief requested.   (Dkt. 20)

On November 22, 2017, the EEOC filed a motion requesting leave to file a second amended complaint, seeking leave to add an ADA unlawful interference claim under 42 U.S.C. § 12203(b) to its current allegations.   (Dkt. 34)   Massage Envy opposes the relief requested.   (Dkt. 37)

For the reasons that follow, the Court orders that the Motion to Dismiss is **GRANTED** and the Motion for Leave is **DENIED**.

### B.  Relevant Allegations of Plaintiff's Amended Complaint

The relevant allegations of the EEOC's Amended Complaint are as follows. Kimberly Lowe ("Lowe") began working for Massage Envy as a massage therapist on January 13, 2012.   (Dkt. 14 at ¶ 13)   Lowe did not have a disability at any time relevant to this matter during or after her employment at Massage Envy.   (Id. at ¶ 14)   In September 2014, Lowe requested time off to visit her sister in Ghana, West Africa.   (Id. at ¶ 17)   Massage Envy's Business Manager, Roxanna Iorio ("Iorio") approved Lowe's request.   (Id. at ¶ 18)   On October 22, 2014, three days prior to her trip, Iorio and one of Massage Envy's owners, Ron Wuchko ("Wuchko"), terminated Lowe out of concern that "she would be infected with Ebola if she traveled to Ghana" and that she would bring it home and infect Massage Envy's employees and clients upon her return.[1]   (Id. at ¶¶ 20–22; Dkts. 16-1, 16-2)   Lowe subsequently traveled to Ghana.   (Dkt. 14 at ¶ 24)

---

[1] The EEOC does not specifically state Lowe's termination date in its Amended Complaint, focusing instead on the fact that Wuchko told Lowe on October 22, 2014 that "if she travelled to

Upon her return, Lowe filed a Charge of Discrimination ("the Charge") with the EEOC, alleging that she was discriminated against in that Massage Envy "perceived [Lowe] as disabled or . . . as having potential to become disabled," in violation of the ADA. (Dkts. 16-1; Dkt. 14 at ¶ 7)   The EEOC conducted an investigation of Lowe's claim and on September 6, 2016, issued a Letter of Determination finding that there was reasonable cause to believe that Lowe was terminated "because she was 'regarded as' disabled" in violation of the ADA.   (Dkt. 16-2)   The EEOC invited Massage Envy to engage in informal conciliation efforts to reach a just resolution of the matter.   (Id.; Dkt. 14 at ¶ 9) On December 27, 2016, the EEOC informed Massage Envy that it was unable to secure an acceptable conciliation agreement.   (Dkt. 14 at ¶ 10)   In the instant action, the EEOC alleges (1) "regarded as" disability discrimination in violation of Section 102(a) of the ADA, and (2) "association discrimination" in violation of Section 102(a) and (b)(4) of the ADA. (Id. at ¶¶ 28–29)

## II.   LEGAL STANDARD

The threshold for surviving a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) is a low one.   Quality Foods de Centro Am., S.A. v. Latin Am. Agribusiness Dev. Corp., S.A., et al., 711 F.2d 989, 995 (11th Cir. 1983).

---

Ghana she would be terminated and not permitted to return to work at Massage Envy upon her return," omitting that she was actually terminated on that date.   (Dkt. 14 at ¶ 20)   However, the pleadings demonstrate that Lowe was terminated on October 22, 2014, as stated in Lowe's Charge of Discrimination ("on 10/22/14 Mr. Wuchko terminated my employment") and in the EEOC's Letter of Determination ("Respondent . . . terminated [Lowe] 3 days prior to a planned trip to Ghana") attached to Massage Envy's Motion to Dismiss.   The Eleventh Circuit permits a district court to consider documents attached to a motion to dismiss without converting the motion into one for summary judgment where the document is central to the plaintiff's claim and is undisputed.   Horsley v. Feldt, 304 F.3d 1125, 1134 (11th Cir. 2002).   The Court finds that it may consider the Charge of Discrimination and Letter of Determination attached to Massage Envy's Motion to Dismiss, as they are referenced in the EEOC's Amended Complaint (Dkt. 14 at ¶¶ 7–8) and the EEOC has not otherwise disputed their authenticity.

3

A plaintiff must plead only enough facts to state a claim to relief that is plausible on its face.   Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955, 1968–69 (2007) (abrogating the "no set of facts" standard for evaluating a motion to dismiss established in Conley v. Gibson, 355 U.S. 41, 45-46 (1957)).   Although a complaint challenged by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff is still obligated to provide the "grounds" for entitlement to relief, and "a formulaic recitation of the elements of a cause of action will not do."   Berry v. Budget Rent A Car Sys., Inc., 497 F. Supp. 2d 1361, 1364 (S.D. Fla. 2007) (quoting Twombly, 127 S.Ct. at 1964–65).   In evaluating the sufficiency of a complaint in light of a motion to dismiss, the well pleaded facts must be accepted as true and construed in the light most favorable to the plaintiff.   Quality Foods, 711 F.2d at 994–95.   However, the court should not assume that the plaintiff can prove facts that were not alleged.   Id.   Thus, dismissal is warranted if, assuming the truth of the factual allegations of the plaintiff's complaint, there is a dispositive legal issue which precludes relief.   Neitzke v. Williams, 490 U.S. 319, 326 (1989).

## III.   DISCUSSION

### A.  Exhaustion of Administrative Remedies

As a threshold matter, plaintiffs asserting discrimination under the ADA, including the EEOC, must first exhaust their administrative remedies (or, in the case of the EEOC, demonstrate that exhaustion requirements have been satisfied by the complainant) before bringing suit in district court.   42 U.S.C. § 12117(a) (applying the powers, remedies, and procedures set forth in § 2000e-5 to the ADA); E.E.O.C. v. Joe's Stone Crabs, Inc., 296 F.3d 1265, 1271 (11th Cir. 2002).   "[A] plaintiff's judicial complaint is limited by the scope of the EEOC investigation which can reasonably be expected to grow

out of the charge of discrimination." <u>Gregory v. Ga. Dep't of Human Res.</u>, 355 F.3d 1277, 1280 (11th Cir. 2004) (quotation marks omitted).   Courts will allow judicial claims that "amplify, clarify, or more clearly focus" the EEOC complaint allegations, but "allegations of new acts of discrimination are inappropriate" for a post-charge judicial complaint.  <u>Id.</u> To determine whether a complaint falls within the scope of the EEOC investigation, the Court considers whether the complaint is "like or related to, or grew out of, the allegations contained in [plaintiff's] EEOC charge."   <u>Id.</u>

Massage Envy contends that the EEOC did not exhaust its administrative remedies as to both its "regarded as" and "association discrimination" claims, to the extent that it alleges any discriminatory conduct occurring after the October 22, 2014 termination date, such as an allegation that it failed to reinstate or rehire Lowe.  (Dkt. 16 at 11) However, in its response, the EEOC expressly states that it "does not allege that Massage Envy 'failed to reinstate or rehire' Lowe" in its Amended Complaint.  (Dkt. 20 at 4) Indeed, the only discriminatory act that the EEOC alleges is Massage Envy's termination of Lowe.  (<u>Id.</u>)   The Parties do not dispute that the EEOC exhausted its administrative remedies with respect to the alleged discriminatory act of termination, as this claim "falls squarely within the scope of the underlying Charge."  (<u>Id.</u>; Dkt. 16 at 11)   As such, the Court considers the EEOC's discrimination claims only to the extent that they apply Lowe's October 22, 2014 termination.

Massage Envy also contends that the EEOC's association discrimination claim under 42 U.S.C. § 102(a) and (b)(4) should be dismissed for failure to exhaust administrative remedies.  (Dkt. 16 at 14)   However, the Court finds that the EEOC's

association discrimination claim is sufficiently related to the facts alleged in Lowe's Charge.   Although the factual allegations are brief, Lowe states:

> Mr. Wuchko terminated me because he believed that in [sic] my trip I could come into *contact with a person having Ebola* and could bring it back home and to work after my trip.   However, Ghana has never had Ebola; thus, there was no risk to my health or the health of those around me.

(Dkt. 16-1) (emphasis added)

Although Lowe does not expressly allege that she has been discriminated against due to her association with known disabled persons, an association discrimination claim could reasonably be expected to grow out of the facts alleged in her Charge.   While she does not use the word "associate," she alleges that she was terminated due to her potential "contact with a person having Ebola."   This language is sufficient to give rise to an investigation into an association discrimination claim.   Thus, the Court finds that the EEOC exhausted its administrative remedies with respect to its association discrimination claim.

### B.  "Regarded As" Disabled Claim

The EEOC alleges that Massage Envy discriminated against Lowe in violation of Section § 102(a) of the ADA when it terminated her because Massage Envy regarded her as disabled.   (Dkt. 14 at ¶ 28)   Section 102(a) prohibits discrimination against a "qualified individual on the basis of disability in regard to . . . discharge of employees." 42 U.S.C. § 12112(a).   "Disability" under the ADA is defined as (1) having "a physical or mental impairment that substantially limits one or more major life activities of such individual," (2) having "a record of such an impairment," or (3) "being regarded as having such an impairment."   Id. at § 12102(1).   The EEOC does not allege that Lowe was disabled or had a record of disability.   In fact, the EEOC's Amended Complaint expressly

states that "[a]t no time material to this Complaint did Lowe have a disability."   (Dkt. 14 at ¶ 14)   Thus, the EEOC posits its claim for discrimination under the "regarded as" prong of the definition of disability.   An individual is regarded as having a disability when he or she is subjected to a prohibited action (such as termination of employment) because of "an actual or perceived physical or mental impairment whether or not the impairment limits or is perceived to limit a major life activity."   Id. at § 12102(3)(A).   As pointed out by the EEOC, in amending the "regarded as" definition in the ADA Amendments Act of 2008 ("ADAAA"), Congress "broadened the application of the 'regarded as' prong of the definition of disability" to include persons who were not actually impaired or whose impairments did not constitute a disability, but were perceived to be impaired nonetheless. 29 C.F.R. Pt. 1630 App'x. §1630.2(l).   However, in the ADA Interpretive Guidance, Appendix to 29 C.F.R. Part 1630, it is clarified that impairment "does not include characteristic predisposition to illness or disease."   Id. at §1630.2(h).

Massage Envy contends that the EEOC's Amended Complaint does not assert a valid claim of disability under the regarded as disabled definition because at the time of Lowe's termination, Wuchko did not perceive Lowe as presently having Ebola; rather, he perceived her as having the potential to become infected with Ebola (i.e., become disabled) in the future.   (Dkt. 16 at ¶ 9)   Massage Envy contends that viewing Lowe to be "predisposed" to becoming disabled in the future due to her then impending trip does not fall under the protection of the ADA.

In its response, the EEOC asserts that employers can violate the ADA even when they discriminate against an "otherwise healthy individual based upon misconceptions about that person's potential to become disabled in the future."   (Dkt. 20 at 10)   To

support this proposition, the EEOC relies on three cases:   School Board Of Nassau County v. Arline, 480 U.S. 273 (1987), E.E.O.C. v. American Tool & Mold, Inc., 21 F. Supp. 3d 1268 (M.D. Fla. 2014), and Valdez v. Minnesota Quarries, Inc., No. 12-CV-0801 PJS/TNL, 2012 WL 6112846 (D. Minn. Dec. 10, 2012).   (Id.)   The EEOC's reliance on these cases is misplaced, as all of the employers in these cases believed, albeit mistakenly, that their employees were ***presently*** impaired.

In Arline, the Supreme Court held that a school teacher was regarded as handicapped under a provision of the Rehabilitation Act of 1973 ("Rehabilitation Act"), 29 U.S.C. § 701 et seq.   480 U.S. at 289.   Similar to 42 U.S.C. § 12102(1) of the ADA defining disability, the Rehabilitation Act's definition of "handicapped individual," then codified at 29 U.S.C. § 706(7)(B), included "any person who . . . is regarded as having [a physical or mental] impairment."   Id. at 278–79.   The teacher, who had a prior history of tuberculosis, was terminated because her employer perceived her to be contagious after several cultures revealed that the illness was active in her system.   Id. at 276.   Unlike in the instant case, the employer's fears that the teacher could infect others in the future were grounded in its misperception that she was currently contagious.   Id. at 284.

In American Tool & Mold, Inc., a job applicant fit the definition of being regarded as disabled when an employer withdrew its conditional offer of employment after learning of the applicant's prior back surgery.   21 F. Supp. 3d at 1278–79.   The court held that upon learning of the prior surgery, the employer regarded the applicant as "disabled, that is, [presently] unfit to perform the job until and unless he could prove otherwise."   Id. at 1278.   Again, unlike in the instant case, the employer's perception, albeit erroneous, was that the applicant was currently impaired.   Id.

The EEOC then relies on <u>Valdez</u>, a Minnesota District Court case that it asserts contains facts "nearly identical to those in the instant case."   (Dkt. 20 at 13)   In <u>Valdez</u>, an employee was terminated *after* traveling to Mexico to visit his gravely ill sister, due to his employer's fears that he had contracted swine flu during his trip.   2012 WL 6112846 at *1.   The court held that the employee did not fall within the definition of regarded as disabled under the statute, due to a narrow affirmative defense in the statute that excludes impairments that are "transitory and minor."   <u>Id.</u> at *2–3.   The EEOC contends that the employee in <u>Valdez</u> had nonetheless implicitly established a prima facie case of discrimination under the regarded as definition because the court decided the matter based on an affirmative defense.   However, this Court is not persuaded that <u>Valdez</u> is factually similar to the instant case.    Like the previous cases cited by the EEOC, <u>Valdez</u> involved an employer who terminated an employee based on a perception that the employee was currently infected with swine flu.   <u>Id.</u> at *1.

The Court declines to expand the regarded as disabled definition in the ADA to cover cases, such as this one, in which an employer perceives an employee to be presently healthy with only the potential to become disabled in the future due to voluntary conduct.   Accordingly, the EEOC has failed to state a claim for discrimination under the regarded as disabled definition of the ADA.

### C. Association Discrimination Claim

The EEOC also alleges that Massage Envy discriminated against Lowe in violation of Section 102 (a) and (b)(4) when it terminated her based on "her association with people in Ghana whom Massage Envy believed to be disabled with Ebola."   (Dkt. 14 at ¶ 29) Section 102(b)(4) provides additional protection against discrimination, prohibiting an

employer from "excluding or otherwise denying equal jobs or benefits to a qualified individual because of the known disability of an individual with whom the qualified individual is known to have a relationship or association."   42 U.S.C. § 12112(b)(4). This type of unlawful discrimination under the ADA is typically referred to as "association discrimination."   See, e.g., Wascura v. City of S. Miami, 257 F.3d 1238, 1242 (11th Cir. 2001); Hilburn v. Murata Elecs. N. Am., Inc., 181 F.3d 1220, 1230 (11th Cir. 1999).

   Massage Envy argues that the EEOC fails to state an association discrimination claim because Lowe had not yet had any association with persons in Ghana, nor were those unidentified people *known* by Wuchko to be disabled as required by the statute. (Dkt. 16 at 14)   The Court agrees.   At the time of Lowe's termination, three days prior to her trip, Lowe had not yet had any association with persons in Ghana.   (Dkt. 14 at ¶ 24; Dkt. 16-2)   Moreover, there is no evidence that Wuchko knew that any individual in Ghana had Ebola.

   The EEOC argues that the timing of the discriminatory act does not control in association discrimination claims, citing to an Eleventh Circuit case in which the Court held that "because the FMLA requires notice in advance of future leave, employees are protected from interference prior to the occurrence of a triggering event, such as the birth of a child."   Pereda v. Brookdale Senior Living Communities, Inc., 666 F.3d 1269, 1274 (11th Cir. 2012).   However, Pereda was discussing interference and retaliation under the FMLA, and did not address an ADA association discrimination claim.   Id. at 1273–76. As such, the Court finds this case to be inapposite.

   The plain language of the ADA makes clear that the relevant individual complainant must be "known to ***have*** [present tense] a relationship" or association with a

person known to have a disability in order for that relationship to serve as a basis for association discrimination.   42 U.S.C. § 12112(b)(4) (emphasis added).   Further, the Eleventh Circuit has held that to establish a prima facie case for association discrimination under the ADA, a plaintiff must establish

> (1) that she was subjected to an adverse employment action; (2) that she was qualified for the job at that time; (3) that her employer *knew at that time that she had* a relative [or associate] with a disability; and (4) that the adverse employment action occurred under circumstances which raised a reasonable inference that the disability of the relative was a determining factor in the employer's decision.

<u>Wascura</u>, 257 F.3d at 1242 (emphasis added) (quotation marks omitted).   It is evident by the plain language of the ADA and binding case law that an employer must know of a presently existing or past association with a disabled person (or persons) at the time of the adverse action to fall within the ADA's association discrimination provision.   The EEOC has not presented, nor is the Court aware, of any Eleventh Circuit case in which an association discrimination claim was sustained based on an employer's knowledge of a potential future association with a disabled person or persons.   Rather, the Eleventh Circuit has evaluated association discrimination claims only when the allegations are based on an existing relationship or association with a disabled person or persons.   <u>See, e.g.</u>, <u>Cusick v. Yellowbook, Inc.</u>, 607 F. App'x 953, 955 (11th Cir. 2015) (demoted employee's daughter had a medical condition); <u>Wascura</u>, 257 F.3d at 1241 (terminated employee's son had AIDS); <u>Hilburn</u>, 181 F.3d at 1222–23 (terminated employee's family had numerous health problems).   Here, there is no question that Wuchko was without knowledge of a current association between Lowe and individuals in Ghana at the time of Lowe's termination, because any such association had not yet occurred.   This fact is fatal to the EEOC's prima facie case.

Further, even if a plaintiff could bring an association discrimination claim for a potential future association with a disabled individual, the ADA clearly requires that such an individual have a "known disability."   42 U.S.C. § 12112(b)(4).   The EEOC points to several cases providing that the ADA's association provision would apply to prevent discrimination against employees who volunteer in HIV/AIDS clinics for their association with patients infected with the disease.   See, e.g., Erdman v. Nationwide Ins. Co., 582 F.3d 500, 511, n. 7 (3d Cir. 2009); Den Hartog v. Wasatch Acad., 129 F.3d 1076, 1082 (10th Cir. 1997); Braverman v. Penobscot Shoe Co., 859 F. Supp. 596, 604 (D. Me. 1994). The ADA Interpretive Guidance provides an identical hypothetical stating the same.   29 C.F.R. § Pt. 1630, App. § 1630.8 ("[T]his provision would prohibit an employer from discharging an employee because the employee does volunteer work with people who have AIDS, and the employer fears that the employee may contract the disease.").

However, in the context of an HIV/AIDS clinic, the people with whom the volunteers are associating are actually infected with HIV or AIDS.   The EEOC misconstrues the purpose of the ADA association provision, which is to protect individuals from discrimination based on unfounded stereotypes and assumptions about the known disabilities of the people with whom they associate (e.g., to protect against the assumption that an individual can contract AIDS by merely associating with an AIDS patient).   Id.   The ADA does not establish a cause of action for discrimination against an individual who associates with people who are merely *regarded as* disabled.   Lowe expressly pleads in her Charge that she was not planning to associate with any people who were known by Wuchko to have Ebola.   (Dkt. 16-1)   Indeed, it is central to the EEOC's theme of the case, as articulated in its complaint and opposition to the Motion to

Dismiss, that Wuchko was woefully ignorant in his beliefs and resulting bias that people in Ghana have Ebola.   His behavior in terminating Lowe based on this nescience and Massage Envy's support of him in this behavior, although deplorable, are not actionable under the statute.

### D.  Leave to Add an Unlawful Interference Claim

The EEOC has requested leave to file a Second Amended Complaint in order to add a claim for unlawful interference under 42 U.S.C. § 12203(b).   (Dkt. 34)   Rule 15(a) of the Federal Rules of Civil Procedure provides that after a responsive pleading is served, a party may amend its complaint "only with the opposing counsel's written consent or the court's leave.   The court should freely give leave when justice so requires."   Fed. R. Civ. P. 15(a).   However, a motion to amend may be denied on grounds, such as "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of amendment."   Equity Lifestyle Props., Inc. v. Fla. Mowing & Landscape Serv., Inc., 556 F.3d 1232, 1241 (11th Cir. 2009) (alteration in original) (quoting Foman v. Davis, 371 U.S. 178, 182 (1962)).

The Court finds that, in this case, allowing the EEOC's proposed Second Amended Complaint would be futile.   "A proposed amendment may be denied for futility 'when the complaint as amended would still be properly dismissed.'"   Coventry First, LLC v. McCarty, 605 F.3d 865, 870 (11th Cir. 2010) (quoting Cockrell v. Sparks, 510 F.3d 1307 (11th Cir. 2007)).

The EEOC's proposed Second Amended Complaint seeks to add a claim under 42 U.S.C. § 12203(b), which makes it unlawful to "coerce, intimidate, threaten, or interfere with any individual in the exercise or enjoyment of, or on account of his or her having exercised or enjoyed, or on account of his or her having aided or encouraged any other individual in the exercise or enjoyment of, any right granted or protected by this chapter." 42 U.S.C. § 12203(b).   In its proposed Second Amended Complaint, the EEOC would allege that when Lowe was terminated, Wuchko "coerced, intimidated, and threatened" Lowe to change her travel plans so as to prevent her from associating with people who had Ebola and foreclose Lowe's "future exercise of rights protected by the ADA including, but not limited to, the right to a reasonable accommodation."   (Dkt. 34-1 at ¶ 28–29) Unlike its association discrimination claim, which could reasonably be expected to grow out of the limited facts alleged in Lowe's Charge, there is no hint of an unlawful interference claim alleged in Lowe's Charge.   (Dkt. 16-1) There are no facts in the Charge that reference any coercion, intimidation, or threats made to prevent Lowe from enjoying purported rights under the ADA.   Thus, this claim would be due to be dismissed for failure to exhaust administrative remedies.

Further, were the EEOC to assert the new claim, it would also be due to be dismissed for failure to state a claim upon which relief can be granted.   Any interference by Wuchko at the October 22, 2014 meeting would have had to be premised on Lowe's existing rights under the ADA.   As discussed extensively above, Lowe had no existing rights under the ADA at the time of her termination, including no right to an accommodation, because she was not disabled, she was not regarded as being disabled, nor had she associated with any persons known to be disabled.   Accordingly, allowing

the EEOC to amend would be futile.

IV.    **CONCLUSION**

Upon consideration of the foregoing, it is hereby **ORDERED** as follows:

1.    Defendant's Motion to Dismiss Plaintiff Equal Employment Opportunity Commission's Amended Complaint Pursuant to Federal Rule 12(b)(6) (Dkt. 16) is **GRANTED**.

2.    Plaintiff's Motion for Leave to File a Second Amended Complaint (Dkt. 34) is **DENIED**.

3.    Plaintiff's Amended Complaint (Dkt. 14) is **DISMISSED**.

4.    The **CLERK** is directed to **TERMINATE** all pending motions as moot and **CLOSE** this case.

**DONE** and **ORDERED** in Tampa, Florida, this 15th day of February, 2018.

MARY S. SCRIVEN
UNITED STATES DISTRICT JUDGE

**Copies furnished to:**
Counsel of Record
Any Unrepresented Person